UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THOMAS BRUNSEN,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>ISIDRO BACA, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 3:19-CV-0608-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 41] |

      This case involves a civil rights action filed by Plaintiff Thomas Brunsen ("Brunsen") against Defendants Isidro Baca ("Baca"), Michael Minev ("Minev"), Martin Naughton ("Naughton"), and Carol Alley ("Alley") (collectively referred to as "Defendants").[2] Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 41, 43.)[3] Brunsen opposed the motion, (ECF No. 45), and Defendants replied. (ECF No. 47.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 41), be granted.

**I.　FACTUAL BACKGROUND**

      Brunsen is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated the Lovelock Correctional Center ("LCC"). On October 2, 2019, Brunsen filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Brunsen was incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 5.) Specifically, Brunsen alleges an Eighth Amendment deliberate indifference to serious medical needs claim, an Americans with

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　Brunsen also named "Hometown Health Care" and "Kelly" as defendants. However, these defendants were ultimately dismissed pursuant to Fed. R. Civ. P. 4(m) for a failure to effectuate service. (ECF No. 29.)

[3]　ECF No. 43 consists of Flynn's medical records filed under seal.

Disabilities Act ("ADA"), 42 U.S.C. § 12132, claim, and a claim under the Nevada Constitution Article 1, § 6, based on denial of treatment for Hepatitis C ("Hep-C"). (ECF No. 5.)

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner. Chronic Hep-C results in liver fibrosis. (ECF No. 41-7 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 41 at 6.) At the time Brunsen filed his initial grievance related to his Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 41-7 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 41 at 6.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.*) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 41-3 at

16 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 41 at 6.)

The current version of MD 219 ensures each inmate has been or is tested for Hep-C, and that those inmates who test positive, and who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. (ECF No. 41-3 at 17-22.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all Hep-C patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 19.)

Brunsen reports he was diagnosed with Hep-C in 1984. (ECF Nos. 43-1 at 5 (sealed); 45-3 at 5.) Brunsen was enrolled in NDOC Chronic Disease Clinic for Hep-C where he was regularly monitored and evaluated for a change in his condition. (*See* ECF No. 43-1 (sealed).) Blood tests conducted in January 2019 revealed Brunsen's APRI score was 0.87 and he did not exhibit any symptoms of decreased liver functioning. (ECF Nos. 43-1 at 8; 43-8 at 2 (sealed); 41-7 at 4.) Therefore, Brunsen was not a candidate for the advanced NDOC Chronic Hep-C treatment at that time. (ECF No. 41-7 at 4.)

Brunsen was approved for DAA treatment in March 2019. (ECF No. 43-2 (sealed).) In May 2019, Brunsen filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 41-4.) Brunsen received a response that he had been approved for further testing required to enter treatment and those test results were pending. (*Id.*) An ultrasound dated June 3, 2019, and reviewed by Brunsen's expert, Dr. Amanda Cheung, showed "coarse parenchyma but no signs of cirrhosis or portal hypertension." (ECF No. 45-3 at 2.)

On October 22, 2019, Brunsen was seen by Kevin Kuriakose, M.D. of Renown Regional Medical Center for a consultation, at which time Dr. Kuriakose noted Brunsen

had "compensated cirrhosis," but imaging revealed "no focal liver mass" and Brunsen's abdomen was soft with "no masses or hepatosplenomegaly." (ECF No. 43-6 at 2, 4 (sealed).) On November 4, 2019, Brunsen began receiving DAA treatment with Epclusa. (ECF Nos. 43-1 at 10; 43-3 (sealed).) Brunsen completed DAA treatment on January 26, 2020. (ECF No. 43-3 (sealed).) Following completion of his treatment, Brunsen was again seen by Dr. Kuriakose on February 25, 2020, for a follow-up appointment. (ECF No. 43-1 at 5-7 (sealed).) Lab results dated January 17, 2020, March 26, 2020, and April 22, 2020, show no detectable Hep-C in Brunsen's blood. (ECF No. 43-4 at 2; ECF No. 45-3 at 2.) An abdominal ultrasound conducted in September 2021 revealed Brunsen's liver was "normal in size and echogenicity," the liver echotexture was "smooth," no masses or ascites were detected, and the liver was not enlarged. (ECF No. 43-5 at 2 (sealed).)

Defendant Alley, former Senior Physician for the NDOC, filed a declaration in support of the motion for summary judgment, stating Brunsen has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Alley does not specifically recall Brunsen, but to her knowledge she has not denied him treatment. Alley did not prescribe advanced Hep-C treatment, has never diagnosed Brunsen as suffering from advanced cirrhosis of the liver, and has never diagnosed Brunsen as suffering from symptoms associated with Hep-C infection. Finally, Alley states that she never told Brunsen that he would need to have an advanced stage of liver failure before treatment would be considered. (ECF No. 41-5.)

Defendant Naughton, Senior Physician for the NDOC, filed a declaration in support of the motion for summary judgment, stating Brunsen has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Naughton was a member of the Hep-C committee, which only reviewed inmates when they qualified for treatment under MD 219 and were referred by their treating physician. Naughton states he never told Brunsen that he was not treated due to the cost of treatment. His APRI score at the time Naughton saw him was 0.86,

which is not an indication of advanced cirrhosis. Naughton has never diagnosed Brunsen as suffering from advanced cirrhosis of the liver. Naughton discussed the APRI scoring, Fibrosure testing, and pros and cons of treatment with Brunsen prior to him beginning treatment. Brunsen's liver ultrasound did not show liver disease as a result of Hep-C infection. (ECF No. 41-6.)

Defendant Minev, NDOC's current Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at Southern Desert Correctional Center. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for Hep-C and are otherwise medically indicated receive advanced treatment. (ECF No. 41-7.)

Moreover, as to Brunsen specifically, Minev stated he reviewed Brunsen's medical records and can attest that Brunsen suffered from Chronic Hep-C and his APRI score, based on blood test results in January 2019, was 0.87. Brunsen did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Brunsen's APRI score and lack of clinical signs indicating decreased liver function, Brunsen was not a candidate for Hep-C treatment at the time of his grievance. Brunsen never showed signed of severe liver disease, according to his medical records. At the time Minev received and responded to Brunsen's second level grievance, Brunsen was in the process of being approved for treatment. (ECF No. 41-7 at 4.)

Defendant Baca, former Warden at NNCC, filed a declaration in support of the motion for summary judgment, stating he did not recall having direct interactions with Brunsen and did not deny medical care to him, nor did he have the authority to order or authorize specific medical treatment. Baca stated he did not set or approve the policy at the NDOC for Hep-C treatment. Finally, Baca states that he had no information that Brunsen had been approved for Hep-C treatment and Baca did not do anything to cause a delay in treatment. (ECF No. 41-8.)

Deposition testimony from Defendant Naughton, medical doctor for the NDOC, states as follows: Naughton first saw Brunsen regarding his Hep-C on October 2, 2017. (ECF No. 45-2 at 16.) Naughton indicated there was no evidence in Brunsen's medical records that he was damaged or harmed. (*Id.* at 17.) Brunsen's APRI score as of November 21, 2019, was 0.87, which would not have qualified him for DAA treatment under the MD 219 policy. (*Id.* at 20-21.) His FibroSure score as of January 28, 2018, was 0.76, which also would not have qualified him for DAA treatment under the MD 219 policy. (*Id.* at 21.) Naughton responded that he would have provided Brunsen with DAA medication if he had been allowed to under the policy. (*Id.* at 22.) Naughton did not understand the MD 219 policy to be a cost saving measure. (*Id.* at 23.) Naughton did not recall and did not know whether Brunsen had cirrhosis. (*Id.* at 25-26.) In reviewing Brunsen's liver ultrasound results, Naughton explained that Brunsen had "no focal liver mass" meaning no cancer. (*Id.* at 27.) In reviewing an abdominal ultrasound, Naughton explained this was done to make sure there is no cancer or any other problem in the liver, spleen, or abdomen. (*Id.* at 28-29.) Findings of the abdominal ultrasound showed "liver measures 14.2 centimeters and demonstrates coarse and parenchymal echotexture," which indicates scarring that could be injury of Hep-C, alcohol, or other things. (*Id.* at 29-30.) Issues with the gallbladder were unrelated to Hep-C. (*Id.* at 30.) Naughton did not have an opinion as to whether Brunsen was injured by a delay in receiving DAA treatment. (*Id.* at 31-32.)

In support of his opposition to the motion for summary judgment, Brunsen includes

the expert report of Dr. Amanda Cheung. (ECF No. 45-3.) Dr. Cheung's report discusses the standard of care for Hep-C treatment. The summary of her report is as follows:

> Based on the review of the medical documents available on these six individuals, it is my opinion that Hep-C treatment was delayed. If these individuals were seen in the outpatient sector, treatment would have been recommended immediately upon diagnosis regardless of fibrosis staging. Currently, the purpose of fibrosis staging is to determine the correct type and length of therapy, rather than to determine whether to provide therapy.

(*Id.* at 6.) Dr. Cheung's report additionally states that "chronic Hep-C infection carries increased morbidity and mortality risk. Once there is progression to cirrhosis, patients may develop liver failure and liver cancer. Even after Hep-C cure, the risk of liver cancer persists. Thus, the ultimate goal is to achieve Hep-C cure prior to development of cirrhosis." (*Id.* at 5.) Importantly, Dr. Cheung's report does not address whether Brunsen suffered any harm based on or because of the delay in treatment.

Finally, in support of his opposition, Brunsen provides the deposition transcripts from Defendant Minev and Defendant's expert, Dr. Chad Zawitz. (ECF Nos. 45-4, 45-6.) The depositions focus more generally on treatment of Hep-C and NDOC's policy but do not specifically address Brunsen. (*See id.*)

## II.  PROCEDURAL HISTORY

On October 2, 2019, Brunsen initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Brunsen was incarcerated at NNCC. (ECF Nos. 1, 5.) On December 19, 2019, counsel made an appearance on behalf of Brunsen. (ECF No. 3.) On screening, the District Court permitted Brunsen to proceed with his complaint which alleges: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against all Defendants; (2) a claim for violation of Nevada Constitution Article I, § 6 against all Defendants; and (3) an ADA claim against Defendants Naughton, Alley, and Minev. (ECF No. 4.)

Around the same time Brunsen filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 34.)

1    As a result, the Court consolidated numerous actions for the purpose of conducting
2    consolidated discovery. (*Id.; see also In Re Hep-C Prison Litigation*, 3:19-CV-00577-
3    MMD-CLB.) While Brunsen's case was not part of the consolidated class, he was still
4    provided with the discovery obtained in the Hep-C consolidated action. (ECF No. 34.)

5    Following an additional period of discovery, on June 15, 2022, Defendants filed
6    their motion for summary judgment arguing Brunsen cannot prevail as: (1) Brunsen's
7    complaint should be dismissed based on the principals of *res judicata*; (2) Brunsen was
8    treated appropriately and in accordance with the medical directives and standards of care;
9    (3) Brunsen cannot recover on the United States or Nevada Constitutional medical
10   deliberate indifference claims; (4) Brunsen cannot prevail on his ADA claim; (5) many of
11   the Defendants were not treating physicians and thus did not personally participate in the
12   alleged constitutional violations; and (6) Defendants are entitled to qualified immunity.
13   (ECF No. 41.) Brunsen opposed the motion, (ECF No. 45), and Defendants replied. (ECF
14   No. 47.)

### III.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*

*v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV. DISCUSSION

On June 15, 2022, Defendants filed their motion for summary judgment arguing Brunsen cannot prevail as: (1) Brunsen's complaint should be dismissed based on the principals of *res judicata*; (2) Brunsen was treated appropriately and in accordance with the medical directives and standards of care; (3) Brunsen cannot recover on the United States or Nevada Constitutional medical deliberate indifference claims; (4) Brunsen cannot prevail on his ADA claim; (5) many of the Defendants were not treating physicians and thus did not personally participate in the alleged constitutional violations; and (6) Defendants are entitled to qualified immunity. (ECF No. 41.)

In opposition, Brunsen asserts that all Defendants denied him Hep-C treatment for years—a medically unacceptable course of treatment under the circumstances—and did so knowing the excessive risks to his health, in violation of both the U.S. and Nevada Constitutions. (ECF No. 45.) Brunsen asserts that Defendants' denial of Hep-C treatment harmed him, leading him to ultimately develop cirrhosis of the liver. (*Id.*) Finally, Brunsen asserts Defendants Naughton, Alley, and Minev violated the ADA by "discriminating against him because of his Hep-C." (*Id.* at 2.)

### A. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105. Article 1, Section 6 of the Nevada Constitution mirrors the Eighth Amendment's Cruel and Unusual Punishment Clause and provides protections that are coextensive with the Eighth Amendment of the United States Constitution. Courts in this district have applied the same legal standards to the cruel and unusual punishment

corollary included in Article 1, Section 6 of the Nevada Constitution as are applied to the corollaries in the United States Constitution. *See, e.g, Fowler v. Sisolak*, No. 2:19-cv-01418-APG-DJA, 2020 WL 6270276, at *4 (D. Nev. Oct. 26, 2020).

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due

care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1. Analysis

Starting with the objective element, the parties agree that Brunsen's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Brunsen cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Brunsen's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Brunsen's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Brunsen to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Brunsen received while incarcerated related to

his Hep-C. (*See* ECF Nos. 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8 (sealed).) According to this evidence, Brunsen was enrolled in NDOC Chronic Disease Clinic for Hep-C where he was regularly monitored and evaluated for a change in his condition. (*See* ECF No. 43-1 (sealed).) Blood tests conducted in January 2019 revealed Brunsen's APRI score was 0.87 and he did not exhibit any symptoms of decreased liver functioning. (ECF Nos. 43-1 at 8; 43-8 at 2 (sealed); 41-7 at 4.) Brunsen was ultimately approved for DAA treatment in March 2019. (ECF No. 43-2 (sealed).) In May 2019, Brunsen filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 41-4.) Brunsen received a response that he had been approved for further testing required to enter into treatment and those test results were pending. (*Id.*) An ultrasound dated June 3, 2019, and reviewed by Brunsen's expert, Dr. Amanda Cheung, showed "coarse parenchyma but no signs of cirrhosis or portal hypertension." (ECF No. 45-3 at 2.)

On October 22, 2019, Brunsen was seen by Kevin Kuriakose, M.D. of Renown Regional Medical Center for a consultation, at which time Dr. Kuriakose noted that Brunsen had "compensated cirrhosis," but imaging revealed "no focal liver mass" and Brunsen's abdomen was soft with "no masses or hepatosplenomegaly." (ECF No. 43-6 at 2, 4 (sealed).) On November 4, 2019, Brunsen began receiving DAA treatment with Epclusa. (ECF Nos. 43-1 at 10; 43-3 (sealed).) Brunsen completed DAA treatment on January 26, 2020. (ECF No. 43-3 (sealed).) Following completion of his treatment, Brunsen was again seen by Dr. Kuriakose on February 25, 2020, for a follow-up appointment. (ECF No. 43-1 at 5-7 (sealed).) Lab results dated January 17, 2020, March 26, 2020, and April 22, 2020, show no detectable Hep-C in Brunsen's blood. (ECF No. 43-4 at 2; ECF No. 45-3 at 2.) An abdominal ultrasound conducted in September 2021 revealed Brunsen's liver was "normal in size and echogenicity," the liver echotexture was "smooth," no masses or ascites were detected, and the liver was not enlarged. (ECF No. 43-5 at 2 (sealed).)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately

treated Brunsen's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Brunsen to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Brunsen's opposition primarily focuses on MD 219 and his assertion that medical standards required immediate treatment. (ECF No. 45 at 9-11.) Brunsen's opposition reiterates his claim, <u>without any admissible medical evidence</u>, that the delay in providing him treatment for his Hep-C caused him further damage, including cirrhosis. (*Id.* at 11.) To prove deliberate indifference, however, Brunsen must show that a delay in treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. Brunsen's own expert witness does not allege that he sustained damage because of the alleged delay. (*See* ECF No. 45-3 at 6) The expert's discussion of harm was in a general section relating to the standard of care, and not directed to Brunsen specifically. (*Id.* at 5.)

While cirrhosis was referenced in two of Brunsen's medical records, aside from his own assertions, Brunsen provides no further evidence or support that a delay in treatment for his Hep-C was <u>the cause</u> of any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Brunsen was treated for his Hep-C through monitoring and other actions and there is no evidence showing that his Hep-C or any delay in providing treatment was <u>the cause</u> of any damage. Therefore, Brunsen has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Brunsen's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate

indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Brunsen has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Brunsen fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Brunsen has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep-C monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the United States and Nevada Constitutional medical deliberate indifference claims be granted.

### B. ADA

The ADA, 42 U.S.C. § 12132, applies in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that a prisoner may state an ADA claim based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006).

However, the Ninth Circuit has held that "the ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added); *see also Marlor v. Madison County*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (stating that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). "Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making 'an

end run around the Eighth Amendment.'" *King v. Calderwood*, 2:13-cv-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister,* 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Brunsen's response states that he suffered the disability of Hep-C, was qualified to receive treatment, was excluded from receiving treatment for Hep-C, and such exclusion was based on his Hep-C disability. (ECF No. 45 at 13.) Thus, Brunsen's ADA claim is based on his allegation that Defendants failed to give him adequate medical treatment for his disability. Brunsen's ADA claim is simply making "an end run around the Eighth Amendment". As discussed above, Defendants were not deliberately indifferent to his serious medical needs and Brunsen cannot use the ADA as an alternative basis to recover damages.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the ADA claim be granted.[4]

## V.    CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 30), be granted.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

---

[4] Because the Court finds that Brunsen's claims fail on the merits, the Court need not address Defendants' *res judicata*, personal participation, or qualified immunity arguments.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 41), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

DATED: October 11, 2022.

_____
UNITED STATES MAGISTRATE JUDGE